UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CATRINA MICHAELS                                                          PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:10-CV-383-JDM

NORTON HEALTHCARE, INC.                                                   DEFENDANT

**MEMORANDUM OPINION**

The parties have filed conflicting motions for summary judgment of the plaintiff's claim that Norton Healthcare, Inc. ("Norton"), interfered with her rights under the Family and Medical Leave Act ("FMLA"). After reviewing the parties' motions and all responses thereto, and being otherwise sufficiently advised, the court has determined that Norton did not interfere with Ms. Michaels's rights under the FMLA, because there exists no evidence Ms. Michaels qualified for FMLA leave at the time she was fired. Accordingly, for the reasons stated below, and by separate order, the court will grant Norton's motion for summary judgment, deny plaintiff's motion for summary judgment, and dismiss Ms. Michael's claims with prejudice.

**I.**

The parties have filed competing motions for summary judgment. Summary judgment is proper only when the moving party establishes that there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This court must view all evidence and draw any reasonable inferences from that evidence in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

**II.**

Although there is much discussion in the pleadings regarding Ms. Michaels's documented absenteeism, and the steps she took to notify her supervisors of her daughter's condition and its potential effect on her ability to come to work, these facts are only relevant if Ms. Michaels's daughter's condition constitutes an FMLA-qualified illness. It does not.

The FMLA entitles eligible employees to take a certain amount of leave from work if they, or family members, suffer from defined health conditions. *See* 29 U.S.C. §2612(a)(1)(D). An eligible employee who properly avails herself of FMLA leave is entitled to return to her previous position, or an equivalent one, *see* 29 U.S.C. § 2614(a)(1), and employers are prohibited from interfering with, restraining, or denying an employee's exercise, or attempted exercise of FMLA rights, *see* 29 U.S.C. § 2615(a)(1), or from firing or otherwise discriminating against any employee for opposing any practice deemed unlawful under the FMLA, *see* 29 U.S.C. § 2615(a)(2).

On Wednesday, November 4, 2009, Ms. Michaels's daughter did not go to school because of vomiting, diarrhea, and a fever. Ms. Michaels believed her daughter might be suffering from the H1N1 ("swine flu") virus, which was the subject of much media attention at the time. That evening, Ms. Michaels took her daughter to the emergency room at Kosair's Children's Hospital. She checked in at 5:58 p.m., was diagnosed with strep throat, vomiting and diarrhea, prescribed a ten-day course of antibiotics, and was discharged at 7:50 p.m..[1] Ms. Michaels' daughter did not attend school the following day (Thursday, November 5) due to

---

[1] Although Ms. Michaels stated during her deposition that she did not leave the hospital until the early hours of Thursday morning, the hospital records make it clear that she was mistaken about that fact.

2

her illness and, pursuant to the doctor's orders, remained home on Friday, November 6.[2] The child was able to return to school the following Monday, and there exists no evidence in the record that there were any post-diagnosis complications associated with her strep throat and other digestive tract problems, or that she remained contagious and therefore unable to attend school more than twenty-four hours following her first dose of antibiotics.

The FMLA was enacted to protect employees who needed to spend significant time away from work to attend to their own, or certain family member's, "serious health conditions." *See* 29 U.S.C. § 612(a)(1)(D). "Serious health condition" is defined under the FMLA as "an illness … that involves … inpatient care … or … continuing treatment by a healthcare provider." 29 CFR § 825.114(a). The phrase "continuing treatment by a healthcare provider" is defined in part as "a period of incapacity … of *more than three* consecutive calendar days … that also involves … [t]reatment two or more times by a healthcare provider … or … treatment by a healthcare provider on at least one occasion which results in a regiment of continuing treatment under the supervision of the healthcare provider." *Id.* (emphasis added).

Because a regimen of continuing treatment can include the prescribed use of antibiotics, and because Ms. Michaels's daughter was evaluated and treated by an emergency room doctor on at least one occasion during the acute period of her illness, she satisfies the "continuing treatment" part of the regulatory requirements. There exists no evidence, however, that Ms. Michaels's daughter endured a period of incapacity of more than three consecutive calendar days. While it is true that she was did not return to school until the Monday following her diagnosis, there is no evidence that she would not have been able to return to school on Saturday,

---

[2] These orders are not reflected in the discharge notes, or any other documentation from the hospital, but the court will accept this recollection as accurate solely for the purposes of evaluating Norton's motion for summary judgment.

had school been in session that day.  In other words, her absence from school for more than three days was due to an intervening weekend, not her health.

In addition, as the legislative history of the FMLA makes clear, "routine, commonplace illnesses of short duration" simply are not covered by the statute.  *See* S. Rep. No. 103-3, at 28 (1993), *reprinted in* 1993 U.S.C.C.A.N 3, 30.[3]  Strep throat is a common childhood infection.  Although untreated strep throat can lead to serious complications, once antibiotic treatment has begun, symptoms rapidly improve, and those suffering are no longer contagious after the first twenty-four hours of treatment.  *See* www.mayoclinic.org/diseases-conditions/strep-throat/basics/treatment/con-20022811.  Similarly, the doctor told Ms. Michael's that the child's vomiting and diarrhea were likely due to a virus that was currently going around and "would pass."  There exists no evidence that those ailments worsened, or required further medical treatment.  The court therefore concludes that all Ms. Michael's daughter's illnesses were routine, commonplace infections, not serious health conditions covered by the FMLA.  This insufficiency alone invalidates Ms. Michael's claims in this action.

### III.

Because Ms. Michaels's sole cause of action in this case is for wrongful interference with her rights under a statute she was not entitled to invoke, any remaining issues in this case are moot.  Norton has met its burden of establishing that there exists no genuine dispute as to any material facts regarding whether Ms. Michael's was entitled to take FMLA leave.  Ms. Michaels

---

[3] The Senate Report states "the term 'serious health condition' is not intended to cover short-term conditions for which treatment and recovery are very brief.  It is expected that such conditions will fall within even the most modest sick leave policies.  Conditions or medical procedures that would not normally be covered by the legislation include minor illnesses which last only a few days and surgical procedures which typically do not involve hospitalization and require only a brief recovery period."

has not met her burden of establishing that Norton is entitled to judgment in its favor as a matter of law. *See* Fed. R. Civ. P. 56(a).

The court will enter an order consistent with this memorandum opinion.

DATE:



cc: counsel of record